UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CARLTON MURRAY,                                    :

                   Petitioner,                :         **<u>MEMORANDUM DECISION</u>**

            - v -                          :         19-CV-767 (DC)

ROBERT CUNNINGHAM, Superintendent,                 :
Fishkill Correctional Facility,

                            :

                 Respondent.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


APPEARANCES:              JUSTIN C. BONUS, Esq.
                          118-35 Queens Blvd., Suite 400
                          Forest Hills, NY  11375
                                    Attorney for Petitioner

                          LETITIA JAMES, Esq.
                          Attorney General of the State of New York
                          By:     Dennis A. Rambaud, Esq.
                                    Assistant Attorney General
                          28 Liberty Street
                          New York, NY  10005
                                    Attorney for Respondent

CHIN, Circuit Judge:

         On December 10, 2014, following a jury trial, petitioner Carlton Murray

("Carlton") was convicted in the Supreme Court of the State of New York, Queens

County (Griffin, J.), of one count of assault in the second degree, two counts of criminal

possession of a weapon in the second degree, one count of criminal possession of a

weapon in the third degree, one count of intimidating a victim or witness in the third degree, and one count of aggravated harassment in the second degree. Dkt. 24-1 at 805, 819-22. The jury acquitted Carlton of attempted murder in the second degree. *Id.* at 819. The Appellate Division, Second Department, affirmed his convictions, *People v. Murray*, 63 N.Y.S.3d 82 (2d Dep't 2017) ("*Murray I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Murray*, 30 N.Y.3d 1118 (N.Y. 2018) (Feinman, J.) ("*Murray II*").

On February 6, 2019, Carlton filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Eastern District of New York. Dkt. 1. On December 9, 2019, he filed an amended petition (the "Petition"). Dkt. 14. Respondent, represented by the New York State Attorney General's Office, filed its opposition to the Petition on March 22, 2021. Dkt. 23. On May 12, 2023, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

## STATEMENT OF THE CASE

### A.    *The Facts*

The evidence at trial established the following:

In 2004, Carlton's father Carl Murray ("Carl") was arrested for a murder that was committed in 2000. Dkt. 24-1 at 628-29, 672. Carlton, as an eyewitness to the murder, testified to the grand jury for the prosecution, and Carl was convicted. *Id* at

551, 587, 672.  Michael Walker ("Michael"), the son of Carlton's sister Cheryl Murray

("Cheryl"), saw Carlton testify at Carl's trial.  *Id.* at 445.

      After Carl's trial, Carlton was not on speaking terms with his nephews

Michael and Michael's brother Marcus Walker ("Marcus").  Carlton lived upstairs in the

same building where Michael and Marcus lived with their mother Cheryl and their two

younger siblings.  *Id.* at 441, 446, 550-51, 631-33.  Michael and Marcus maintained a

relationship with Carlton's children and wife, Cikaya Washington ("Cikaya").  *Id.* at 446,

551-52.  Michael testified that after Carl's trial but prior to the incident that is the subject

of the Petition, he and Marcus had altercations with Carlton.  *Id.* at 446-47.[1]  Specifically,

Michael testified that on one occasion, Carlton swung at Marcus, he went to grab

Carlton, and Carlton later brought people to the apartment to "jump" him.  *Id.* at 447-48.

Carlton's testimony regarding the same incident was that Michael and Marcus attacked

him while they were all attending a memorial for Cikaya's cousin.  *Id.* at 633-35.  Carlton

testified that following this incident, Michael and Marcus sent him "threats" calling him

a "rat," "not loyal," and "not family."  *Id.* at 635.  Carlton also testified that Michael and

Marcus sent photographs to his wife's phone in which Marcus was "holding up his

---

[1]    Respondent's memorandum in opposition to the Petition indicates that these incidents occurred before Carl's trial, Dkt. 23-1 at 7, but Michael's testimony indicates that these incidents occurred after the trial, Dkt. 24-1 at 446-47.

middle finger" and "Marcus and some other people [were] holding their hands in a certain way." *Id.* at 636.

On November 5, 2012, around 1:45 p.m., Michael and his mother Cheryl went to their apartment building in Far Rockaway, Queens to pick up some clothes and other belongings. *Id.* at 449, 451, 588. They had not been living at the apartment because Hurricane Sandy had left the building without electrical power, and only a small generator powered the lobby, hallways, laundry room, and the video monitoring system throughout the building. *Id.* at 385-88, 449. Marcus was waiting at the building. *Id.* at 450. When Michael arrived with his mother, he saw Cikaya driving away from the building in Carlton's car. *Id.* Michael, Marcus, their mother, and their two younger siblings went upstairs to their apartment and stayed for about ten to twenty minutes. *Id.* at 451. While inside, Marcus and Michael saw that Carlton's car had returned, but "[thought] nothing of it." *Id.* at 542-43. Marcus had to go to work, so he and Michael left and headed back down the stairs. *Id.* at 451, 543, 588-89.

As Michael and Marcus were heading down the stairs, they saw Carlton on the first-floor landing. *Id* at 452, 543. Carlton smirked at Marcus and pulled out a black pistol and cocked it. *Id.* at 452-54, 543-44. Michael grabbed for the gun. *Id.* at 452-54, 544. Marcus joined in, and the three of them fell down the stairs while struggling for the gun. *Id.* at 454-55. At the bottom of the flight of stairs, three shots went off in quick succession. *Id.* at 459. Michael was hit by three bullets in his legs -- two in his right

4

thigh and one in his left thigh. *Id.* at 535-36. As Michael tried to get up and limp into the hallway, Carlton kicked Michael and hit Michael with the gun repeatedly. *Id.* at 460-61. Cikaya and Carlton's nephew, Kayshawn Samuels, ran into the hallway, and Cikaya stopped Marcus from getting to Michael. *Id.* at 391, 545-46, 640.[2]

Wayne Miller, the superintendent of the building, witnessed Carlton and Kayshawn kicking and hitting Michael in the hallway, and he called 911. *Id.* at 389-93. Bleeding, Michael limped toward the laundry room where he collapsed on the floor. *Id.* at 394, 461-62, 652. Carlton ran out of the building. *Id.* at 653. Marcus went outside and saw Carlton exit at the front of the building and get into his car. *Id.* at 546.

Cheryl testified that while upstairs, she looked out the window and did not see Michael and Marcus but saw Carlton's vehicle. *Id.* at 589. Wondering why Michael and Marcus were taking so long to leave the building, she called Michael, and he told her that Carlton had shot him. *Id.* Cheryl called 911 and walked down sixteen flights of stairs with her two other children to get to Michael. *Id.* at 589-90. When she got to Michael, she saw him bleeding on the laundry room floor and observed that he had gunshot wounds in his leg. *Id.* at 590.

---

[2]     There was debate at a pre-trial hearing as to whether Kayshawn (spelled "Quayshawn" in Carlton's memorandum in support of the Petition) Samuels was in fact the other male alongside Carlton, but Carlton eventually testified that Kayshawn was with him in the building and identified him in the video footage as the other party involved. Dkt. 24-1 at 84-89, 640, 662-63; *see* Dkt. 19.

Police arrived at the building and recovered three deformed bullets and three shell casings from the stairwell and hallway. *Id.* at 352. They also observed blood on the stairs. *Id.* There were several surveillance video cameras in the apartment building. *Id.* at 385-86. Video footage was recovered from the lobby, the stairwell, the hallway, the laundry room, and an area outside of the building where trash cans were kept. *Id.* at 400-09, 757. Miller identified Carlton, Kayshawn, Cikaya, Michael, and Marcus in video footage from multiple angles. *Id.* at 401-09. The stairwell camera captured the altercation between Carlton, Michael, and Marcus. *Id.* at 402-03.[3]

On November 16, 2012, Michael testified in a grand jury regarding the incident. *Id.* at 479.[4] On May 14, 2013, Carlton called Michael multiple times while Michael was at home with Cheryl. *Id.* at 480-82, 593. Cheryl heard Michael yelling, "I am not a rat. You the rat," and, after Michael placed the call on speakerphone, Cheryl recognized that Carlton was on the other line. *Id.* at 592-93. Cheryl took the phone and started talking to Carlton, and she testified that Carlton stated, "[I]f you weren't my nephew, you would be dead." *Id.* at 592. Michael was upset and scared after the phone calls. *Id.* at 482, 593-94.

---

[3]     Video footage, introduced into evidence as People's Exhibit 5, depicted a black gun in Carlton's hand. Dkt. 24-1 at 400, 406-07. The hallway camera captured Carlton and Kayshawn kicking Michael and showed Carlton hitting Michael with the gun. *Id.* at 403-04, 406-07.

[4]     Although Michael testified at trial that he testified in the grand jury on November 16, 2012, Dkt. 24-1 at 479, Respondent's memorandum in opposition to the Petition states that Michael testified in the grand jury in early May 2013, Dkt. 23-1 at 11.

**B.**    *Procedural History*

    **1.**    *State Court Proceedings*

    *a.*    *The Trial Court*

On January 15, 2013, Carlton was charged with one count of second-degree attempted murder, one count of second-degree assault, two counts of second-degree criminal possession of a weapon, and one count of third-degree criminal possession. *Id.* at 21-22; Dkt. 19 at 3. On May 31, 2013, Carlton was also charged, in connection with the May 14 phone call, with one count of second-degree aggravated harassment and one count of third-degree intimidating a victim or witness. Dkt. 24-1 at 38-41; Dkt. 19 at 3.

Trial commenced on December 1, 2014, before Queens County Supreme Court Justice James Griffin and a jury. Dkt. 24-1 at 152. The prosecution called five witnesses: Detective Gregory DiCostanzo, Miller, Michael, Marcus, and Cheryl. *Id.* at 358-80, 381-431, 439-532, 537-83, 585-611.

The defense called Carlton. *Id.* at 624-700. Contrary to the prosecution witnesses' testimony, Carlton testified that, in the stairwell, Michael first pulled out a gun, and he acted in self-defense. *Id.* at 644. Carlton also testified that he grabbed for the gun, and it went off during the struggle between him and Michael. *Id.* at 645. He testified that once he was able to get a hold of the gun, he hit Michael with it to stop him from fighting with him. *Id.* at 649, 651. On cross-examination, Carlton testified that as

7

Michael got up to limp away from him, he continued to strike Michael with the gun. *Id.* at 685-88.

Carlton testified that after he left the building, he dropped the gun into a trash can just outside the back door of the building. *Id.* at 653. The video footage from the back of the building, however, showed Carlton and Kayshawn running past the dumpsters and garbage pails without discarding anything. *Id.* at 691-94, 741-42. When asked about the discrepancy between his testimony and the video footage on cross-examination, Carlton testified that he had not watched any of the footage prior to the trial. *Id.* at 686-87.

Carlton testified that he was shot in the left leg and foot during the incident but that he did not get medical treatment until seven days later when he was arrested. *Id.* at 645-46, 688. To support the argument that Carlton was shot, the defense entered into evidence the sneakers that Carlton was wearing during the incident and showed the jury a hole in the right sneaker that Carlton testified was made by the bullet. *Id.* at 647-48. The sneaker contained only one hole, however, and the prosecution argued in its summation that if the bullet had entered the sneaker, it would have had to remain inside of the shoe because there was not a separate exit hole. *Id.* at 748-49. The prosecution also argued that a bullet could not possibly have been fired into the sneaker at the time of the incident because only three shots were fired and three bullets were recovered from the stairwell. *Id.*

8

On December 10, 2014, Carlton was convicted of one count of second-degree assault, two counts of second-degree criminal possession of a weapon, one count of third-degree criminal possession, one count of third-degree intimidating a victim or witness, and one count of second-degree aggravated harassment. *Id.* at 819-22. The jury acquitted Carlton of second-degree attempted murder. *Id.* at 819. He was sentenced to an aggregate minimum term of 8 years, 10 months, and 8 days, and an aggregate maximum term of 10 years. *Id.* at 838-39.

b.      *The Direct Appeal*

Represented by counsel, Carlton appealed to the Appellate Division, Second Department, on August 25, 2016. Dkt. 24 at 3-68. Carlton claimed that (1) the trial court should have dismissed the indictments because his speedy trial rights were violated; (2) he received ineffective assistance of trial counsel because counsel misapprehended the law which resulted in a legally unsound defense, failed to review video footage with him prior to trial which negatively impacted his credibility, and introduced evidence that directly contradicted Carlton's version of the facts and undermined his defense; (3) he received ineffective assistance of counsel because the trial counsel labored under an actual conflict of interest by representing both the defendant and Kayshawn; and (4) the evidence was legally insufficient to sustain a conviction for intimidating a witness or victim in the third degree. Dkt. 24 at 5-6, 33-67.

On October 18, 2017, the Appellate Division affirmed the convictions. *Murray I*, 63 N.Y.S.3d at 82. First, the court rejected Carlton's contention that he was deprived of his statutory right to a speedy trial. *Id.* at 83. The court found that, subtracting excludable periods caused by other proceedings concerning the defendant, a maximum of 158 days were chargeable to the People, which is less than the 181 days allowed by law. *Id.* Second, the court found that Carlton's ineffective assistance of counsel claim was "mixed" because it was based on information both on and outside the record. *Id.* at 84. The court held that, based on the information on the record, there was no evidence that Carlton was deprived of the effective assistance of counsel. *Id.* The court held that because the ineffective assistance of counsel claim could not be resolved without reference to information outside the record, Carlton had to raise the claim in a Criminal Procedure Law ("CPL") § 440.10 proceeding. *Id.*[5] Third, the court rejected Carlton's claim that his conviction for intimidating a victim or witness in the third degree was not supported by legally sufficient evidence, concluding that the evidence, viewed in the light most favorable to the prosecution, was legally sufficient. *Id.*

On October 31, 2017, Carlton applied for leave to appeal to the New York Court of Appeals. Dkt. 24 at 147-55. On February 9, 2018, the Court of Appeals denied leave to appeal. *Murray II*, 30 N.Y.3d at 1118 (Feinman, J.).

---

[5]     According to Petitioner's reply in support of the Petition, he has not filed a motion to vacate pursuant to CPL § 440.10. *See* Dkt. 26 at 2.

2.  *Proceedings Below*

On February 6, 2019, represented by counsel, Carlton filed his original

habeas petition raising the same claims he had raised in the Appellate Division, as well

as a claim of actual innocence.  *See* Dkt. 1.  In the original petition, he stated that he was

in the process of filing a CPL § 440.10 motion because there was newly discovered

evidence supporting his actual innocence -- specifically, that he did not possess a gun

prior to the incident.  *Id.* at 6.  On February 11, 2019, Carlton's counsel filed a motion to

stay the petition so Carlton could file a CPL § 440.10 motion and exhaust the

unexhausted claims.  Dkt. 5 at 1.  Respondent opposed, arguing that the motion to stay

should be denied because Carlton did not show good cause for his failure to exhaust.

Dkt. 7 at 1.  The Court concluded that Carlton did not show good cause for failure to

exhaust his claims because he "provide[d] no further information about the nature of

such evidence, including when it was 'discovered,' why he did not possess this evidence

during trial, or why he did not file a § 440.10 motion on the basis of such evidence prior

to filing his habeas petition."  Dkt. 11 at 7.  Accordingly, the Court denied Carlton's

motion to stay the petition without prejudice and granted him thirty days to either file a

renewed motion to stay the petition or amend the petition.  *Id.* at 11-12.

On December 9, 2019, Carlton filed the Petition, asserting two claims:

(1) he received ineffective assistance of trial counsel because trial counsel

misapprehended the law, failed to review evidence that contradicted the defense's case,

and labored under an actual conflict of interest because he represented both Carlton and Kayshawn and (2) there was legally insufficient evidence to convict him for intimidating a witness.  Dkt. 14 at 2-3.  Respondent opposed the Petition on the grounds that (1) the ineffective assistance of trial counsel claim was partially time-barred and unexhausted and (2) there was sufficient evidence to support Carlton's conviction for intimidation of a witness.  Dkt. 23-1 at 19-32.

## DISCUSSION

**A.**  *Federal Review of State Convictions*

As a threshold matter, a federal court may not grant a habeas petition where the petitioner is in custody pursuant to a judgment of a state court unless the petitioner "has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  A constitutional claim is not exhausted until the essential factual and legal premises of the constitutional claim have been presented to the highest state court capable or reviewing it.  *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010); *Galdamez v. Keane*, 394 F.2d 68, 73 (2d Cir. 2005); *see also Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997).  Additionally, an applicant is not deemed to have exhausted his state remedies if he has the right under state law to raise, "*by any available procedure,* the question presented."  28 U.S.C. § 2254(c) (emphasis added).

Moreover, "[i]t is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision

rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (internal quotation marks and citations omitted). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Id.* "A federal habeas court determines whether the state court judgment rests on such an independent and adequate ground," *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996), and "adequacy is itself a federal question," *Cone*, 556 U.S. at 465 (internal quotation marks and citation omitted).

Where a claim is adjudicated on the merits in state court, a federal court may not grant habeas relief unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017). Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded

13

disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

When considering a sufficiency argument on habeas review, "[a] federal court must look to state law to determine the elements of the crime." *Fama v. Comm'r Corr. Services.*, 235 F.3d 804, 811 (2d Cir. 2000) (citation omitted). A federal court "must consider whether, as a matter of federal law, there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law." *Einaugler v. Supreme Court of New York,* 109 F.3d 836, 839 (2d Cir. 1997) (citations omitted). The reviewing court "must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." *Fama,* 235 F.2d at 811 (citation omitted). A "petitioner bears a very heavy burden in convincing a federal *habeas* court to grant a petition on the grounds of insufficiency of the evidence." *Id.* (citation omitted). Indeed, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson,* 566 U.S. 650, 651 (2012) (quoting *Cavazos v. Smith,* 565 U.S. 1, 2 (2011)).

**B.**    *Analysis*

I address the claims of the Petition: (1) ineffective assistance of counsel

and (2) insufficient evidence to convict Carlton of intimidating a witness or victim.  Dkt.

14 at 2-3.

### 1.  *Ineffective Assistance of Counsel*

Under New York state law, mixed claims of ineffective assistance of

counsel -- that is, claims that turn on evidence both on and off the record -- must

proceed under a separate CPL § 440.10 motion.  *See People v. Wattkis*, 39 N.Y.S.3d 17, 18

(1st Dep't 2016); *People v. Marryshow*, 24 N.Y.S.3d 170, 172 (2d Dep't 2016) ("Since the

defendant's claim of ineffective assistance of counsel cannot be resolved without

reference to matter outside the record, a CPL § 440.10 proceeding is the appropriate

forum for reviewing the claim in its entirety.").

In his first claim for relief, Carlton argues that he received ineffective

assistance of counsel because his trial counsel misapprehended the law, failed to review

video evidence with him before the trial, introduced evidence materially refuted by the

prosecution, and labored under an actual conflict of interest by representing both

Carlton and Kayshawn.  Dkt. 19 at 12-25.[6]  Respondent asserts that all of these claims

---

[6]    The Petition asserts the conflict of interest argument under a separate heading, but I
analyze it alongside the other three ineffective assistance of counsel arguments.  Dkt. 19 at 21.

are unexhausted because Carlton failed to raise them in an appropriate state court forum. Dkt. 23-1 at 19.[7]

Carlton's first and second arguments -- that his trial counsel misapprehended the legal standards necessary for his defense case-in-chief and that his counsel failed to adequately prepare him for cross-examination on the video evidence -- certainly turn on evidence outside the record. *People v. Fernandez*, 70 N.Y.S.3d 497, 497-98 (1st Dep't 2018) (finding that whether counsel misunderstood the law requires factfinding outside of the record in a § 440.10 proceeding); *People v. Varmette*, 895 N.Y.S.2d 239, 244 (3d Dep't 2010) ("To the extent that defendant contends that counsel failed to adequately . . . prepare defendant for trial, these claims concern matters outside the record and are more properly the subject of a CPL § 440.10 motion.").

Carlton's third and fourth arguments -- that his trial counsel was ineffective because counsel improperly introduced evidence and that counsel labored under an actual conflict of interest -- are based in part on evidence in the trial transcript, such as the admission of Carlton's shoe as evidence and the court's hearing on the conflict of interest itself. *See* Dkt. 24-1 at 83-89, 648. Consideration of these arguments,

---

[7]     Respondent also argues that one of Carlton's ineffective assistance of counsel arguments -- misapprehension of the law -- is untimely and procedurally defaulted because it was first asserted in Carlton's amended petition. Dkt. 23-1 at 19-20. The Petition was indeed filed outside of the one-year statute of limitations applicable to state prisoners' habeas petitions to federal court. 28 U.S.C. § 2244(d)(1). The entire ineffective assistance of counsel claim fails because it is unexhausted, and thus it is unnecessary to decide whether this argument relates back to the original petition, which was filed within the limitations period.

however, would also require factfinding outside of the record.  *See People v. Whitfield*,

843 N.Y.S.2d 260, 261 (1st Dep't 2007) ("Defendant's ineffective assistance of counsel

arguments . . . are not reviewable on direct appeal since they involve matters outside

the record concerning counsel's choice of trial tactics . . . ."); *People v. Macerola*, 391

N.E.2d 990, 993 (N.Y. 1979) (concluding that even with evidence on the record of a

conflict of interest, a court is "unable to ascertain whether the defendants' decision to

proceed with their attorney was knowingly and intelligently made" without gathering

additional evidence outside of the record).  Thus, each of Carlton's ineffective assistance

arguments rests on additional evidence not contained within the record.

On direct appeal, the Appellant Division dismissed all of Carlton's

ineffective assistance claims as unreviewable, instructing him to instead file a motion to

vacate under CPL § 440.10.  *Murray I*, 63 N.Y.S.3d at 82.[8]  As Carlton has not filed a

§ 440.10 motion to date, he deprived the state court of an opportunity to review his

ineffective assistance of counsel claims, and his claims are therefore unexhausted.[9]  *See*

*O'Neal v. New York*, 465 F. Supp. 3d 206, 219 (E.D.N.Y. 2020) ("To properly exhaust an

---

[8]      There is no time limit on a petitioner's ability to bring a § 440.10 motion in New York state court after a state court affirms the direct appeal, and this option is still available to Carlton.  *See* CPL § 440.10(1) ("At *any time* after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment." (emphasis added)).

[9]      To exhaust a claim, "[t]he petitioner must apprise the highest state court of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005).

ineffective assistance of counsel claim that relies on matters outside the record, the petitioner must raise it as part of a motion to vacate judgment under N.Y. Crim. Proc. Law § 440.10 and then seek leave to appeal to the Appellate Division." (internal quotation marks and citation omitted)); *Thompson v. Griffin*, 14-cv-1641, 2019 WL 1368995, at *7 (E.D.N.Y. Mar. 25, 2019) (determining that a mixed claim of ineffective assistance not raised in a § 440.10 motion was unexhausted and unreviewable for federal habeas purposes); *Carvajal v. Artus*, 633 F.3d 95, 104-05 (2d Cir. 2011) (federal habeas court procedurally barred from granting relief when petitioner partially failed to exhaust his state remedies); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Furthermore, the Appellate Division "clearly and expressly" stated that Carlton's ineffective assistance claim fails because the matter was not brought in a CPL § 440.10 proceeding; thus, federal habeas review on the claim is barred because the state law rule is independent of the federal question and adequate to support the judgment. *See Glenn*, 98 F.3d at 724 ("[P]rocedural default in the state court will only bar federal habeas review when 'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).

Carlton's second claim regarding insufficiency of evidence, however, is exhausted. Thus, the Petition is "mixed." *Perez v. Miller*, 20-cv-2864, 2021 WL 4502472, at *3 (E.D.N.Y. Sept. 30, 2021). The Supreme Court in *Rhines v. Weber* instructs courts

presented with a mixed habeas petition to "allow the petitioner to delete the

unexhausted claims and to proceed with the exhausted ones if dismissing the entire

petition would unreasonably impair the petitioner's right to obtain federal relief," or

instead deem the petition amended to excise all unexhausted claims.  544 U.S. 269, 278

(2005).  This Court elects to deem the unexhausted ineffective assistance of counsel

claims as excised from the Petition.[10]  *See, e.g., Gomez v. Lamanna*, 18-cv-7252, 2021 WL

4949057, at *11 (E.D.N.Y. Oct. 25, 2021) (court elects to "delete [petitioner's] unexhausted

ineffective assistance of counsel claim, and review [petitioner's] other claims.").

Accordingly, I will not consider the merits of the unexhausted ineffective assistance of

counsel claims, and I only address the merits of the insufficiency of the evidence claim.

### 2.  *Insufficiency of Evidence*

In his second claim for relief, Carlton argues that the evidence at trial was

legally insufficient to sustain his conviction for intimidating a witness or victim in the

third-degree under New York Penal Law § 215.15.  Dkt. 14-1 at 3.[11]  He argues that there

---

[10]     A court can also dismiss a mixed claim in its entirety when complete dismissal would
not prejudice a petitioner's ability to meet the one-year statute of limitations period under 28
U.S.C. § 2254(b)(1)(a).  *See Grist v. Griffin*, 13-cv-5806, 2014 WL 347465, at *2 (E.D.N.Y. Jan. 30,
2014).  I decline to do so here, because the limitations period has expired on Carlton's habeas
petition and complete dismissal would prejudice Carlton's ability to obtain any relief.

[11]     The relevant portion of Penal Law § 215.15 states: "A person is guilty of intimidating a
victim or witness in the third degree when, knowing that another person possesses information
relating to a criminal transaction and other than in the course of that criminal transaction or
immediate flight therefrom, he:  1. Wrongfully compels or attempts to compel such other person
to refrain from communicating such information to any court, grand jury, prosecutor, police
officer or peace officer by means of instilling in him a fear that the actor will cause physical
injury to such other person or another person."

was no testimony from Michael or Cheryl that he threatened to physically hurt them if either of them communicated any information about the incident to a court, the grand jury, the district attorney, or the police.  Dkt. 19 at 26.

After reviewing the trial evidence, the Appellate Division held that the evidence "was legally sufficient to establish, beyond a reasonable doubt, [Carlton's] guilt." *Murray I*, 63 N.Y.S.3d at 84.  As the Appellate Division reviewed the sufficiency claim on the merits, its decision must be accorded "substantial deference." *Fischer*, 780 F.3d at 560.  The Appellate Division's rejection of the sufficiency argument was certainly reasonable, as the testimony of Michael and Cheryl regarding Carlton's phone calls to Michael on May 14, 2013, was sufficient evidence for the jury to conclude beyond a reasonable doubt that Carlton "wrongfully compel[led] or attempt[ed] to compel" Michael and Cheryl to refrain from communicating information to the court.  N.Y. Penal Law § 215.15; *see also Cavazos*, 565 U.S. at 2.[12]

It was also more than reasonable for the Appellate Division to conclude that the jurors relied on sufficient evidence -- and their common sense -- that Carlton knew that Michael possessed information regarding the crime, as Michael was himself the victim of the crime.  Michael had already testified in the grand jury before the phone calls occurred.  Dkt. 24-1 at 480-82.  It was therefore reasonable for the jurors to infer

---

[12]     Carlton admitted in his direct testimony that he called Michael on May 14, 2013, but disputed the content of the phone calls. Dkt. 24-1 at 636-37.

from Michael and Cheryl's testimony that the purpose of Carlton's phone calls was to

compel Michael to stop communicating with the court about the incident, that is, to stop

him from testifying at trial. *See People v. Gamble*, 74 N.Y.2d 904, 905-06 (N.Y. 1989)

(holding that the defendant's statements that he would harm the victim if she spoke to

the police is sufficient evidence for the jury to infer guilt on intimidation of a victim or

witness in the third-degree).

Carlton's contention on appeal that his statements over the phone were

"merely rambling" that "expressed love for his nephews" does not undermine the jury's

factual determination that Carlton made a threat. Dkt. 19 at 26. The jury properly

considered Cheryl's and Michael's testimony, including that Michael was "upset" by the

phone calls. Dkt. 24-1 at 482. Viewing the evidence in the light most favorable to the

prosecution, as this Court is required to do, *see Fama*, 235 F.2d at 811, there was

sufficient evidence for the jury to find beyond a reasonable doubt that Carlton was

guilty of intimidating a witness.

Carlton is therefore not entitled to relief on this claim.

## CONCLUSION

Carlton has failed to show a basis for relief under 28 U.S.C. § 2254.

Accordingly, his habeas petition is denied. Additionally, I decline to issue a certificate

of appealability because Carlton has not made a substantial showing of the denial of a

constitutional right. *See* 28 U.S.C. § 2253.

The Clerk of the Court shall enter judgment accordingly and close this

case.

SO ORDERED.

Dated:      New York, New York
            July 20, 2023

                                        DENNY CHIN
                                        United States Circuit Judge
                                        Sitting By Designation

22